Matt Valenti (State Bar No. 253978)
ANTICANCER, INC.
7917 Ostrow Street
San Diego, CA 92111
(858) 654-2555 (Telephone)
(858) 268-4175 (Facsimile)
E-mail: mattvalenti@anticancer.com

Attorney for Plaintiff AntiCancer, Inc.

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BERTHOLD TECHNOLOGIES, U.S.A., LLC, and BERTHOLD TECHNOLOGIES GMBH & CO., KG, et al,<br><br>　　　　Defendants. | Case No. 3:10-CV-02343-JAH-JMA<br><br>ANTICANCER, INC.'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER, AND IN SUPPORT OF ANTICANCER'S MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY<br><br>Judge:　John A. Houston<br><br>Date:　　　　March 28, 2011<br>Time:　　　　2:30 PM<br>Courtroom:　11 |

Case No. 3:10-CV-02343-JAH-JMA

0

**TABLE OF CONTENTS**

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  THE FACTS SHOW DEFENDANTS HAVE HAD MULTIPLE CONTACTS WITH THIS DISTRICT AND HAVE PURPOSEFULLY AVAILED THEMSELVES OF THE BENEFITS OF THEIR ACTIVITIES HERE . . . . . . . . . . . . . 1

III. THIS COURT HAS PERSONAL JURISDICTION OVER BERTHOLD GERMANY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.   This Court Has Specific Jurisdiction Over Berthold Germany . . . . . . . . . . . . . . . 7

        1.   Purposeful availment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2.   Contact related to this case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

        3.   Fair play and substantial justice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.   This Court Has General Jurisdiction Over Berthold Germany Because of Its Substantial, Continuous, and Systematic Contacts Here . . . . . . . . . . . . . . . . . 8

    C.   It is Fair For This Court to Exercise Jurisdiction Over Berthold Germany . . . . . . 9

IV.  VENUE IS PROPER IN THIS DISTRICT OVER BERTHOLD USA . . . . . . . . . . . . . . . 9

    A.   This Court Has Specific Jurisdiction Over Berthold USA . . . . . . . . . . . . . . . . . . 10

    B.   This Court Has General Jurisdiction Over Berthold USA . . . . . . . . . . . . . . . . . . .11

    C.   Since This Court Has Jurisdiction Over Berthold Germany, Fairness and Judicial Economy Weigh in Favor of This District Remaining as Venue For AntiCancer's Claims Against Berthold USA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

V.   DEFENDANTS' MOTION SHOULD BE DENIED IN ITS ENTIRETY, OR IN THE ALTERNATIVE, ANTICANCER SHOULD BE GRANTED LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY . . . . . . . . . . . . . . . . . . . . . .12

    A.   Defendants' Motion Should Be Denied  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

    B.   In the Alternative, AntiCancer Should be Granted Leave to Conduct Limited Discovery on the Issue of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# **TABLE OF AUTHORITIES**

Cases

*AT&T v. Compagnie Bruxelles Lambert*
94 F.3d 586 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ballard v. Savage*
65 F.3d 1495 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*
223 F.3d 1082 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Beverly Hills Fan Company v. Royal Sovereign Corp.*
21 F. 3d 1558, 1564-67 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brainerd v. Governors of the Univ. of Alberta*
873 F.2d 1257, 1258 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Calix Networks, Inc. v. Wi-Lan, Inc.*
2010 U.S. Dist. LEXIS 97657 (N.D. Cal. Sept. 8, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Core-Vent Corp. v. Nobel Industries*
11 F.3d, 1482 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Doe, I v. Unocal Corp.*
248 F.3d 915 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Haisten v. Grass Valley Medical Reimbursement Fund Ltd.*
784 F. 2d. 1392, 1395 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*International Shoe Co. v. Washington*
326 U.S. 310 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lake v. Lake*
 817 F.2d 1416 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Laub v. U.S. Dep't of the Interior*
342 F.3d 1080 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Nuance Communications, Inc. v. Abbyy Software House*
Case No. 08-02912 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Orchid Biosciences, Inc. v. St. Louis University*
198 F.R.D. 670 (S.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*
328 F.3d 1122 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sher v. Johnson*
911 F.2d 1357 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Patent Rights Protection Group, LLC v. Video Gaming Technologies, Inc.*
No. 2009-1391 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

*Worldwide Volkswagen Corp. v. Woodson*
444 U.S. 286 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'antisemitisme*
433 F. 3d 1199 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Other Authority:</u>

California Code of Civil Procedure § 410.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Rule of Civil Procedure 26(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

I.     INTRODUCTION

Defendants Berthold Technologies, U.S.A., LLC ("Berthold USA") and Berthold Technologies GMBH & Co., KG ("Berthold Germany") have moved to dismiss for lack of personal jurisdiction contending this Court lacks general or specific personal jurisdiction over them.

Defendants rely on the declarations of their respective presidents, who aver that neither company does business in California or in this District. The declarations only tell part of the story, however, and leave out crucial facts regarding the defendants' activities in this district, particularly in regard to the parent company, Berthold Germany. The truth is that Berthold Germany repeatedly reached out to a local company who was seeking a re-examination of a key patent owned by a California-based competitor of Berthold Germany, involving parallel technology to that contained in the patents-in-suit of this case.

The local company that Berthold Germany reached out to was none other than AntiCancer. After using AntiCancer as a means of achieving its own business goals, i.e., attempting to invalidate a competitor's patent, Berthold Germany should not now be allowed to pretend that it is a stranger to this District. Likewise, both Berthold Germany and Berthold USA have repeatedly targeted this District for commercial purposes, attending trade shows in and around San Diego and even selectively contacting AntiCancer for marketing purposes. Finally, for reasons of fairness and judicial economy, if this Court exercises jurisdiction over Berthold Germany, the venue for AntiCancer's claims against its wholly-owned subsidiary, Berthold USA, should remain in this District. For these reasons, defendants' motion should be denied in its entirety.

As an alternative to outright denial of the defendants' motion, AntiCancer should be allowed to take limited, jurisdictional discovery on the factual issues raised by the defendants' numerous activities in this District.

II.    **THE FACTS SHOW DEFENDANTS HAVE HAD MULTIPLE CONTACTS WITH THIS DISTRICT AND HAVE PURPOSEFULLY AVAILED THEMSELVES OF THE BENEFITS OF THEIR ACTIVITIES HERE.**

The following facts are drawn from the declaration of AntiCancer's President and CEO, Dr. Robert M. Hoffman. All citations to paragraph numbers and exhibit numbers refer to the paragraphs in Dr. Hoffman's declarations and the exhibits attached thereto, unless otherwise indicated.

In 2004, AntiCancer was involved with commercial litigation in the San Diego County Superior Court with a California-based company called Xenogen Corporation ("Xenogen") (Case No. GIC 772297). Xenogen's main products, which it manufactured and sold, were imaging instruments used for molecular imaging, which were similar in design and purpose to Berthold's NightOwl device. ¶ 1.

During this litigation with Xenogen, AntiCancer, through its attorneys, requested the Patent and Trademark Office conduct re-examination proceedings of one of Xenogen's key patents, U.S. Patent No. 5,650,135 (the "Xenogen '135 patent"). This patent is generally directed towards methods of molecular imaging, including the use of fluorescent proteins. It is similar to, and in some ways complimentary to AntiCancer's patented technology, including the two patent-in-suit in this case. This is one reason AntiCancer and Caliper Life Sciences, Inc., which acquired Xenogen around 2007, entered into a cross-licensing agreement with their respective patents. ¶ 2.

In or around July 2004, AntiCancer received an unsolicited and unexpected letter from a Dr. Manfred Hennecke, the International Sales Manager of Berthold Technologies GMBH &Co., KG ("Berthold"). ¶ 3. (See Exhibit 1.) Dr. Hennecke's letter contained information and documents intended to help AntiCancer's re-examination request, including numerous alleged prior art references. The letter indicated that Berthold's lawyer was assisting Berthold in its efforts to aid AntiCancer in the re-examination procedure. (In a later email, that attorney was identified as Andy Neely, Berthold Germany's attorney in this case. See Exhibit 9.) Dr. Hennecke's first letter concluded with the statement "We at BERTHOLD are grateful to your company for requesting the re-examination of the Xenogen patents. You understand that as German company we could not do this." Exhibit 1.

For approximately the next year, Dr. Hennecke continued to write to AntiCancer regarding the re-examination, and to send dozens of pages of documents that Berthold Germany felt would be helpful. (See Exhibits 2, 3, 4, 5, 7, 8, 9, and 10.)[1] ¶ 4.

---

[1] Because AntiCancer has since settled with Xenogen, and in an abundance of caution, AntiCancer has manually redacted parts of these letters so as not to identify any specific information regarding the Xenogen '135 patent. AntiCancer has also refrained from including any of the documents attached to Berthold's correspondence, other than the February 6, 2004 letter sent by Xenogen to Berthold, attached as Exhibit 6. None

In or around 2004 Dr. Hoffman met in person with Dr. Hennecke at a trade show in Dusseldorf Germany, and they discussed the Xenogen '135 re-examination. According to Dr. Hoffman, based on Dr. Hennecke's correspondence and conversations Dr. Hoffman had with Dr. Hennecke, it was very clear that Berthold Germany's purpose in assisting AntiCancer's efforts was to cripple a commercial competitor. ¶ 5.

Another likely reason for Berthold Germany's eager assistance of the re-examination was revealed in one of the documents Dr. Hennecke sent, this one attached to his letter of December 20, 2004. Exhibit 6. This was a February 6, 2004 letter from Xenogen to Berthold, from an attorney named David R. Boyko, Xenogen's Vice President of Licensing and Legal Services. Mr. Boyko stated in part "I am contacting you because it would be helpful to discuss Berthold Technologies' interest in a license to appropriate rights under Xenogen's intellectual property. To aid in your analysis, I have enclosed courtesy copies of these patents." Exhibit 6. One of the patents listed in Mr. Boyko's letter to Berthold was the Xenogen '135 patent. ¶ 6.

It is reasonable to view Mr. Boyko's letter as a clear warning to Berthold Germany that it needed to obtain a license to Xenogen's imaging technology because Berthold Germany's imaging devices could be used to infringe upon Xenogen's patents. It is also reasonable to infer from Berthold Germany's eagerness to assist in the re-examination that it did not want to acquire the license from Xenogen. AntiCancer never discovered whether or not Berthold Germany eventually obtained a license from Xenogen. ¶ 7.

Around this time Dr. Hoffman also wrote to and spoke with Dr. Hennecke about the need for Berthold Germany to obtain a license to AntiCancer's own imaging patents, which, like Xenogen's, could be practiced on Berthold Germany's instruments. When Dr. Hoffman met with Dr. Bennecke in Dusseldorf, he agreed that Berthold Germany should and would obtain a license from AntiCancer, even going so far as to explicitly promise Dr. Hoffman that Berthold Germany would obtain the license. The two also discussed a possible business partnership in which AntiCancer could help

---

of this redacted information is relevant to the determination of the issues presently before the Court. However, should the Court wish to view these documents in their complete and unredacted form, AntiCancer will move to file them so under seal.

1  support Berthold Germany's sales of its imaging instruments. Ultimately, however, Berthold
2  Germany declined to obtain the license, despite AntiCancer's repeated written and verbal requests
3  that it do so. ¶ 8.
4  　　Over the years, Dr. Hoffman has seen Berthold – either Berthold Germany or Berthold USA,
5  or both – marketing their products at various trade shows and scientific meetings in San Diego and
6  elsewhere in California.  ¶ 9.  AntiCancer has been able to locate a few documents demonstrating
7  instances of the defendants' presence in San Diego, attached as Exhibits 11 through 14.  At the 14th
8  Symposium on Bioluminscence and Chemiluminescence held at San Diego's Paradise Resort and
9  Spa in 2006, Berthold's Chairman of the Board, Dr. Fritz Berthold, personally awarded the Marlene
10 DeLuca prizes to several researchers in attendance. (See Exhibit 11.)  At the 2006 Nuclear Science
11 Symposium in San Diego, it appears that Berthold scientist Alfred Klett presented a paper entitled
12 "Pulse Neutron Targeting, A New Approach." (Exhibit 12.)  In 2010 Berthold was an exhibitor at
13 the Clinical Lab Expo in Anaheim, California. (Exhibit 13.)  And Berthold is currently planning to
14 attend the Society for Laboratory Automation and Screening (SLAS) trade show at the San Diego
15 Convention Center in February 2012.  Exhibit 14.
16 　　Berthold USA has also contacted AntiCancer directly in an attempt to market its products.
17 Exhibit 15 is an email from Charles Schmidt, the National Sales Manager for Berthold USA.  In it,
18 Mr. Schmidt indicates that he conducted internet research on AntiCancer, and specifically contacted
19 AntiCancer because it is a "scientific researcher that might be interested in our products." Exhibit 15.
20 　　It is likely that Berthold has sold at least one NightOwl instrument in San Diego, contrary to
21 the declarations submitted in support of the defendants' motion.  Attached as Exhibit 16 is an
22 advertisement from Bio Surplus, a local laboratory resale company, promoting the sale of a used
23 Berthold NightOwl.  When AntiCancer contacted Bio Surplus by phone regarding this instrument,
24 AntiCancer was informed that the instrument was originally used by a local San Diego biotech. ¶ 11.
25 **III.   THIS COURT HAS PERSONAL JURISDICTION OVER BERTHOLD GERMANY.**
26 　　AntiCancer need only make a *prima facie* showing of jurisdiction to avoid the defendant's
27 motion to dismiss. *Doe, I v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir. 2001) (per curiam).
28 AntiCancer "need only demonstrate facts that if true would support jurisdiction over the defendant."

*Id.* (quoting *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995)). Unless directly contravened, AntiCancer's version of the facts is taken as true, and "conflicts between the facts contained in the parties' affidavits must be resolved in [AntiCancer's] favor for purposes of deciding whether a *prima facie* case for personal jurisdiction exists." *Doe, I,* 248 F.3d at 922 (quoting *AT&T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996)); *see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082, 1087 (9th Cir. 2000) ("Because the *prima facie* jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt [plaintiff]'s version of events for purposes of this appeal.").

California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution. *See* Cal. Code Civ. Pro. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). Hence, this court "need only determine whether personal jurisdiction in this case would meet the requirements of due process." *Brainerd v. Governors of the Univ. of Alberta,* 873 F.2d 1257, 1258 (9th Cir. 1989).

Due process requires "that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316. To determine whether the district court can exercise specific jurisdiction over the defendants, the court applies the following three-part test: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; *or* perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *Core-Vent Corp. v. Nobel Industries,* 11 F.3d, 1482, 1485 (9th Cir. 1993) (quoting *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987)).

The purposeful availment prong of the minimum contacts test requires a "qualitative evaluation of the defendant's contact with the forum state," *Lake,* 817 F.2d at 1421, in order to

determine whether "[Defendants'] conduct and connection with the forum State are such that [Defendants'] should reasonably anticipate being haled into court there." *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297. The purposeful availment requirement is met if the defendant "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir. 1990). Physical contact with the forum state is not a necessary condition, "within the rubric of purposeful availment, the [Supreme] Court has allowed the exercise of jurisdiction over a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." *Haisten v. Grass Valley Medical Reimbursement Fund Ltd.,* 784 F. 2d. 1392, 1395 (9th Cir. 1986).

### A. This Court Has Specific Jurisdiction Over Berthold Germany.

#### 1. Purposeful availment.

Berthold Germany had multiple, purposeful, and systematic contacts with this District and elsewhere in California related to this action. Berthold Germany reached out to AntiCancer, a San Diego company, to help defeat the patent of Berthold Germany's competitor Xenogen, which was based in Alameda, California.  It did this through its employee Dr. Hennecke, whose own title – "International Sales Manager" – shows that these activities had a business purpose. (See, e.g., Exhibit 1).  Xenogen's warning letter (Exhibit 6), and Berthold's involvement of its attorney, Andy Neely (see Exhibit 9) shows that Berthold Germany may have also had legal reasons for attempting to influence the re-examination of the Xenogen '135 patent.  In either or both cases, it is clear that Berthold Germany purposefully and repeatedly directed its activities at San Diego, and availed itself of the benefits of such contacts, all in order to further its own business and legal goals.

#### 2. Contact related to this case.

The Xenogen '135 patent is similar and complimentary to AntiCancer's patents-in-suit (Hoffman Dec. ¶ 2).  This fact could not have gone unnoticed by Berthold since AntiCancer repeatedly informed Berthold Germany of its need to obtain a license.  Hoffman Dec. ¶8.  In addition, in connection with Berthold Germany's assistance with the Xenogen re-examination, Berthold Germany promised to obtain a license from AntiCancer. *Id.*  Whether this promise was made because Berthold genuinely intended to obtain a license, or only in order to secure

AntiCancer's cooperation with Berthold Germany's proxy attack on the Xenogen '135 patent remains unclear. What is clear, however, is that the activities Berthold Germany pursued here in San Diego are thoroughly intertwined with the issues presented in this case, thus giving this Court specific jurisdiction over Berthold Germany.

        3.      <u>Fair play and substantial justice.</u>

Discussed fully below in Section C.

**B.    <u>This Court Has General Jurisdiction Over Berthold Germany Because of Its Substantial, Continuous, and Systematic Contacts Here.</u>**

The Federal Circuit has held that attendance by a defendant at trade shows can provide a reasonable basis for a court to exercise personal jurisdiction. *Patent Rights Protection Group, LLC v. Video Gaming Technologies, Inc.* No. 2009-1391 (Fed. Cir. 2010) at page 9. Here Berthold Germany has attended several such trade shows and scientific meetings, and plans on attending more, including:

- The 14th Symposium on Bioluminscence and Chemiluminescence held at San Diego's Paradise Resort and Spa in 2006, where Berthold Germany's Chairman of the Board, Dr. Fritz Berthold, personally awarded the Marlene DeLuca prizes to several researchers in attendance. (Exhibit 11.)
- The 2006 Nuclear Science Symposium in San Diego, where Berthold Germany scientist Alfred Klett presented a paper entitled "Pulse Neutron Targeting, A New Approach." (Exhibit 12.)
- The 2010 Clinical Lab Expo in Anaheim, California. (Exhibit 13.)
- Berthold Germany is currently planning to attend the Society for Laboratory Automation and Screening (SLAS) trade show at the San Diego Convention Center in February 2012. (Exhibit 14).

As Dr. Hoffman's declaration states, it is very likely that Berthold Germany and Berthold USA have invested considerable time and resources into promoting and selling their products to the local San Diego biotech industry. Hoffman Dec. ¶ 12. It is also likely that the above examples of contacts Berthold Germany has had in and around this District described above are but a few of

many commercial contacts it has had with San Diego over the years – aside from the contacts it made with AntiCancer regarding the Xenogen re-examination proceedings, which were likely motivated partly by legal strategy reasons, partly by commercial reasons. These verified contacts by Berthold Germany, in addition to the fact that it has likely made many more such contacts, demonstrates a pattern of substantial, systematic, and continuous contacts with this District.

### C. It is Fair For This Court to Exercise Jurisdiction Over Berthold Germany.

The exercise of specific jurisdiction would comport with principles of fair play and substantial justice. Berthold Germany has engaged in substantial, continuos, and systematic commercial activities here in California, attending numerous trade shows and planning on attending more. Based on these contacts alone, it is fair for Berthold Germany to be deemed "present" in this forum for all purposes. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'antisemitisme*, 433 F. 3d 1199, 1205 (9th Cir. 2006).

Berthold Germany has also very selectively availed itself of the benefits of contact with this District by using AntiCancer as a proxy in order to hurt a competitor. Berthold Germany had no compunction against inserting itself into litigation between AntiCancer and Xenogen, two California companies who Berthold Germany knew were litigating against each other in this District. Further, Berthold Germany either sincerely promised to obtain a license from AntiCancer, or else did so without intending to follow through on the promise and only for the purpose of using AntiCancer as a proxy to strike at a commercial competitor.

For all of these reasons, fairness dictates that it is reasonable for Berthold Germany to be subject to this Court's jurisdiction.

### IV.    VENUE IS PROPER IN THIS DISTRICT OVER BERTHOLD USA.

In support of this motion Berthold Germany's President has stated "Berthold USA and its third party sales agents are solely responsible for all sales of the accused products within the United States and Berthold USA ships the product from its Tennessee headquarters to U.S. purchasers." Declaration of Hans Josef Oberhofer, ¶ 6. Berthold USA's President has also stated that "Berthold USA has sold a total of seven accused products to entities in the United States since November 12, 2004," and that of these, four were sold to California entities in "the Los Angeles, San Francisco, and

Sacramento areas." Declaration of Rhonda Mullins, ¶ 6. Ms. Mullins also asserts that "Berthold USA has not done any business related to the accused products in San Diego or elsewhere in the Southern District of California." Id., ¶ 7.

These statements appear to be carefully crafted, and are unhelpful to this Court's determination of jurisdiction. The cutoff date Ms. Mullins cites ("November 12, 2004") may have significance to Berthold USA's theory of its own patent liability, but should not apply to this Court's determination of jurisdiction. According to Ms. Mullins statement, there might very well have been sales of the accused devices prior to that date – but such relevant information is not provided and remains unknown. In addition, it is not only the sales of accused products in San Diego that could subject Berthold USA to jurisdiction here; sales of any of Berthold USA many other products would also be evidence of minimum contacts.

Aside from these glaring deficiencies in Ms. Mullin's declaration, her statement nevertheless provide evidence of a *prima facie* case for jurisdiction in this District because it shows that Berthold USA puts products into the stream of commerce knowing they will end up in California (and likely in San Diego). The Federal Circuit has repeatedly "addressed the stream of commerce theory in the context of intellectual property interests." *Nuance Communications, Inc. v. Abbyy Software House,* Case No. 08-02912 (Fed. Cir. 2010) at page 13. Reversing the District Court's dismissal in that case on jurisdictional grounds, the Federal Circuit found that "[a]lthough the foreign manufacturer had no license for doing business in the forum, no assets, employees, or agents for service of process in this forum, and no direct sales in this forum" it was nevertheless proper to exercise jurisdiction "because the manufacturer purposefully shipped products through an established distribution channel with the expectation that those products would be sold in the forum." *Id.*, at page 14 (quoting *Beverly Hills Fan Company v. Royal Sovereign Corp*. 21 F. 3d 1558, 1564-67 (Fed. Cir. 1994)). The same facts regarding Berthold USA's stream of commerce exist here, and the result should be the same here as well.

**A.     This Court Has Specific Jurisdiction Over Berthold USA.**

Berthold USA contacted AntiCancer directly in an attempt to market its products. Exhibit 15 is an email from Charles Schmidt, the National Sales Manager for Berthold USA. In it, Mr. Schmidt

indicates that he conducted internet research on AntiCancer, and specifically contacted AntiCancer because it is a "scientific researcher that might be interested in our products." *Id*.  This, together with Berthold Germany's promise to obtain a license from AntiCancer, is evidence of specifically targeted activities related to this case.

**B.     This Court Has General Jurisdiction Over Berthold USA.**

The email sent by Charles Schmidt's National Sales Manager to AntiCancer fairly raises the inference that Berthold USA markets and sells directly to customers in San Diego, in addition to allowing its "third party sales agents" to do so.  It also raises the strong possibility that Berthold USA has specifically reached out to other biotech companies in this forum. Likewise, Berthold Germany's attendance at numerous local trade shows and scientific meetings raises an inference that Berthold USA has also participated in those events, either on its own or in conjunction with its parent company.

In addition, contrary to the declaration of Ms. Mullins, it is likely that Berthold USA (or its "third party sales agent") has sold at least one NightOwl instrument in San Diego.  Exhibit 16 is an advertisement from Bio Surplus, a local laboratory resale company, promoting the sale of a used Berthold NightOwl.  When AntiCancer contacted Bio Surplus by phone regarding this instrument, AntiCancer was informed that the instrument was originally used by a local San Diego biotech. ¶ 11. Regardless of whether it was Berthold USA or its "third party sales agent" that sold the product here in San Diego, the Federal Circuit is clear that jurisdiction is appropriate where the defendant "purposefully shipped products through an approved distribution channel with the expectation that those products would be sold in the forum." *Nuance Communications,* Case No. 08-02912 (Fed. Cir. 2010) at page 14.

All of these facts present a *prima facie* case for general jurisdiction over Berthold USA.

**C.     Since This Court Has Jurisdiction Over Berthold Germany, Fairness and Judicial Economy Weigh in Favor of This District Remaining as Venue For AntiCancer's Claims Against Berthold USA.**

As detailed above, this Court has both specific and general jurisdiction over Berthold USA, and it would be reasonable to exercise jurisdiction over it in this District.  Furthermore, should this Court find it has personal jurisdiction over Berthold Germany, the parent company, it would be

fairest and the best use of judicial resources to keep AntiCancer's claims against the defendants in this District. According to the Federal Circuit in *Patent Rights Protection*, supra at page 10, not only would this "further the interstate judicial system's interest in obtaining the most efficient resolution of controversies," it also would satisfy AntiCancer's "interest in obtaining convenient and effective relief, as [AntiCancer] might otherwise face the substantial burden of pursuing separate, largely similar actions against [Berthold Germany] and [Berthold USA] in the respective home states" (in this case, in this District and in the Eastern District of Tennessee, as preferred by Berthold USA).

Fairness to AntiCancer and judicial economy both weigh heavily in favor of keeping the action against Berthold USA here in this District.

## V. DEFENDANTS' MOTION SHOULD BE DENIED IN ITS ENTIRETY, OR IN THE ALTERNATIVE, ANTICANCER SHOULD BE GRANTED LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY.

### A. <u>Defendants' Motion Should Be Denied</u>.

Considering the evidence submitted herewith, and resolving all factual conflicts in AntiCancer's favor, AntiCancer has made out a strong *prima facia* case of both general and specific personal jurisdiction for both defendants, as well as proper venue for Berthold USA. The case should go forward in this District as to both defendants.

### B. <u>In the Alternative, AntiCancer Should be Granted Leave to Conduct Limited Discovery on the Issue of Jurisdiction.</u>

Unless the parties agree or the Court orders otherwise, neither party may seek discovery from any source until after the parties have conducted the Rule 26(f) conference. Fed. R. Civ. P. 26(d)(1). However, while a motion to dismiss for lack of personal jurisdiction is pending, the Court should allow discovery which addresses jurisdictional issues. *Orchid Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670, 672 (S.D. Cal. 2001).

While the court is vested with broad discretion to permit or deny jurisdictional discovery, the court should ordinarily permit jurisdictional discovery while a motion to dismiss is pending "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Calix Networks, Inc. v. Wi-Lan, Inc.*, 2010 U.S. Dist. LEXIS 97657, *7-*8 (N.D. Cal. Sept. 8, 2010) (quoting *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080,

1093 (9th Cir. 2003)). "Indeed, it may be an abuse of discretion for a court to deny jurisdictional discovery where such discovery *might* well demonstrate jurisdictionally relevant facts and the plaintiff is denied the opportunity to develop the jurisdictional record." *Id*. (citing and quoting *Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (emphasis in original)).

Moreover, there is no requirement in the Ninth Circuit that a party seeking jurisdictional discovery first establish a *prima facie* case of personal jurisdiction. *Orchid*, *supra*, 670 F.R.D. at 673 ("It would [] be counterintuitive to require a plaintiff, prior to conducting discovery, to meet the same burden that would be required in order to defeat a motion to dismiss."). The Ninth Circuit has not followed other Circuit courts that have imposed such a requirement. *Id*. Here, the declaration of Dr. Hoffman and its voluminous exhibits demonstrating several types of repeated contacts with this District over a lengthy period of time makes out a strong and well documented *prima facie* case of personal jurisdiction, making AntiCancer's motion all the more proper.

AntiCancer should be granted leave to conduct jurisdictional discovery in this case because pertinent facts bearing on the question of jurisdiction are controverted and such discovery will enable the parties to present a more satisfactory showing of the facts necessary for the Court to rule on Defendants' Motion to Dismiss. While Defendants submitted declarations categorically denying any connection with the California or San Diego, the declaration of AntiCancer's President, Dr. Robert M. Hoffman, and the exhibits attached thereto, demonstrate ample factual issues regarding the extent and frequency of the defendants contacts within this District.

Accordingly, AntiCancer should be granted leave to conduct jurisdictional discovery to determine the full extent of all contacts defendant have had that would subject Defendant to the personal jurisdiction of this Court. The topics would include:

- the extent of defendants' local marketing and sales efforts, such as their attendance of local scientific meetings and trade shows;
- the relevant facts regarding the defendants' activities directed at invalidating the Xenogen '135 patent, and their commercial or legal motivations for those activities;
- whether or not the defendants eventually obtained a license from Xenogen, and the extent of any business activities in California related to that license; and,

- the facts regarding Dr. Hennecke's discussions with AntiCancer regarding obtaining a license from or forming a business partnership with AntiCancer.

Based on the foregoing, Plaintiff respectfully requests leave to conduct limited jurisdictional discovery in the form of a Rule 30(b)(6) deposition, a percipient witness deposition of Dr. Hennecke, and related limited document requests.

## VI. CONCLUSION.

The defendants' motion should be denied. In the alternative to full denial of their motion, AntiCancer should be granted leave for jurisdictional discovery to more fully assess the jurisdictional facts.

Respectfully submitted,

Dated: March 14, 2011          ANTICANCER, INC.


By:   /s/ Matt Valenti
      Matt Valenti
      Attorney for Plaintiff AntiCancer, Inc.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record in *AntiCancer, Inc. v. Berthold Technologies, U.S.A., LLC.*, *et al.*, Case No. 10-CV-02343-JAH-JMA who are deemed to have consented to electronic service, are being served this 14$^h$ day of March, 2011 with a copy of the following documents via the Court's CM/ECF system per Civil Local Rule 5.4.:

1. ANTICANCER, INC.'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER AND IN SUPPORT OF ANTICANCER'S MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY.

2. DECLARATION OF ROBERT M. HOFFMAN, PH.D. IN SUPPORT OF ANTICANCER, INC.'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER, AND IN SUPPORT OF ANTICANCER'S MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY.

3. EXHIBITS 1-16 ATTACHED TO THE DOCUMENT DESCRIBED IN NO. 2.

I certify that all parties in these cases that have made an appearance are represented by counsel who are CM/ECF participants who have consented to electronic service.

By:   /s/Matt Valenti
      Matt Valenti