1  **GOODWIN PROCTER LLP**
Kurt M. Kjelland (CSB No. 172076)
2  kkjelland@goodwinprocter.com
Nicole S. Cunningham (CSB No. 234390)
3  nscunningham@goodwinprocter.com
4365 Executive Drive, 3rd Floor
4  San Diego, CA 92121
Telephone: 858.202.2700
5  Facsimile: 858.457.1255

6

Attorneys for Defendants Berthold
7  Technologies U.S.A., LLC and
Berthold Technologies GMBH & Co., KG
8

9                    **UNITED STATES DISTRICT COURT**

10                 **SOUTHERN DISTRICT OF CALIFORNIA**

11

ANTICANCER, INC.,

12                                              Case No.:   3:10-cv-02343-JAH (JMA)

            Plaintiff,
13                                              Judge: John A. Houston
      v.                                        Complaint Filed:  November 11, 2010
14

15  BERTHOLD TECHNOLOGIES, U.S.A., LLC      **REPLY TO PLAINTIFF'S OPPOSITION**
    and BERTHOLD TECHNOLOGIES GMBH      **TO MOTION TO DISMISS OR, IN THE**
16  & CO., KG, et al                          **ALTERNATIVE, TO TRANSFER**

17          Defendants.

18

19

20

21

22

23

24

25

26

27

28

---

REPLY TO OPPOSITION TO MOTION TO DISMISS                CASE NO. 3:10-cv-02343-JAH (JMA)

1    Plaintiffs' jurisdictional allegations put forward in its Response constitute an attempt to dig up

2    something, somewhere that can somehow connect Defendants with this District with the hope that

3    something will stick.  However, Plaintiff has woefully failed in establishing a *prima facie* case that

4    jurisdiction in this district is proper.  Berthold Germany has not manufactured, sold, or distributed any

5    of the accused products anywhere in the United States.  Berthold Germany also does not have any

6    continuous or systematic contacts with California.  Accordingly, Berthold Germany is not subject to

7    the jurisdiction of this Court.  Furthermore, Berthold USA has not manufactured, sold, or distributed

8    any of the accused products in this District and is not otherwise subject to jurisdiction within this

9    district.  Accordingly, this District is the improper venue for the claims over Berthold USA.  Since

10   venue is improper in this Court with respect to Berthold USA and this Court does not have personal

11   jurisdiction over Berthold Germany, the case must be dismissed or, in the alternative, transferred to the

12   Eastern District of Tennessee at Knoxville.

13   **I.      Berthold Germany Is Not Subject to Personal Jurisdiction in California**

14   In its Response, Plaintiff attempts to assert that Berthold Germany is subject to general and

15   specific personal jurisdiction in this Court based on sporadic occurrences completely unrelated to

16   this action.  None of Plaintiff's allegations are sufficient to subject Berthold Germany to

17   jurisdiction in California.

18   A.      Specific Jurisdiction Over Berthold Germany Does Not Exist in California.

19   To assert specific personal jurisdiction over Berthold Germany, Plaintiff must show that its

20   cause of action arises from Berthold Germany's contacts with this forum, *i.e.* Berthold Germany

21   has committed an act of patent infringement in California, and that the exercise of jurisdiction over

22   Berthold Germany complies with due process. *See Trintec Indus., Inc. v. Pedre Promotional*

23   *Prods., Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d

24   1316, 1320 (9th Cir. 1998).  The alleged "wrongful conduct" identified in paragraphs 20-25 of the

25   Complaint relate to the design, manufacture and sale of certain NightOwl imaging systems and

26   alleged instructions provided by Defendants for use thereof.  As explained in Defendants' Motion

27   to Dismiss, Berthold Germany does not and has never manufactured, sold, and/or distributed the

28   accused products in the United States, much less California. Moreover, Plaintiff cannot show that

1

1   its claim for patent infringement against Berthold Germany arises from or relates to any

2   California-based contacts.

3          Rather, Plaintiff alleges that specific jurisdiction over Berthold Germany is proper because

4   Berthold Germany provided information to Plaintiff in 2004-2005 for use in a reexamination

5   proceeding concerning an unrelated patent owned by an unrelated third party.  The provision of

6   information to Plaintiff for use in invalidating a patent owned by another party has nothing at all to

7   do with the manufacture or sale of NightOwl cameras and is entirely unrelated to Plaintiff's cause

8   of action.  Plaintiff is not suing Berthold Germany under an allegation that its provision of

9   information to Plaintiff related to a third party's patent is somehow improper.  Plaintiff cites no

10  case law in support of its novel argument that specific jurisdiction over Berthold Germany is

11  appropriate in California based on this type of contact and it clearly is not.

12         Plaintiff also suggests that specific jurisdiction is proper because Plaintiff allegedly wrote

13  to Berthold Germany regarding a licensing proposal and the parties subsequently discussed the

14  proposal in <u>Germany</u>.  However, a proposal made by <u>Plaintiff</u> cannot give rise to jurisdiction over

15  Berthold Germany.  Berthold Germany could not reasonably expect that if Plaintiff proposed a

16  licensing agreement and then discussed the proposal with Berthold Germany in <u>Germany</u>, that

17  Berthold Germany could then be sued in California.

18         Put simply, Defendant must have taken some action within California related to the alleged

19  infringement of Plaintiff's patents for specific jurisdiction to arise.  Berthold Germany has taken

20  no such actions.  To the contrary, Berthold Germany is not subject to specific jurisdiction in

21  California because it has not purposefully availed itself of the privilege of conducting any

22  allegedly infringing activities within this forum. Accordingly, Berthold Germany lacks minimum

23  contacts and cannot be subject to specific jurisdiction in California.

24         B.      General Jurisdiction over Berthold Germany Does Not Exist in California.

25         General jurisdiction is much more difficult to show than specific jurisdiction and typically

26  requires that a defendant has a physical presence in the state or is at least licensed to do business

27  within the state.  Specifically, the plaintiff must show that the defendant's contacts with the forum

28  are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S.

2

1   408, 415-416 (1984).  Berthold Germany has no substantial, continuous and systematic contacts

2   with California.  As explained in the Motion to Dismiss, Berthold Germany has no permanent

3   corporate office, branch office, officers, directors, employees, tangible or real property, or bank

4   accounts in California.  Berthold Germany is not licensed to do business in California and it has

5   no stock of goods within California.

6          Nevertheless, Plaintiff takes the position that this Court has general jurisdiction over

7   Berthold Germany because Berthold Germany has attended several trade shows in California and

8   plans to attend another trade show next year.  This is clearly insufficient to establish general

9   jurisdiction over Berthold Germany.  Initially, Berthold Germany would like to clarify that it has

10  never displayed or offered for sale any NightOwl system at any trade show or meeting in

11  California. Oberhofer Decl.  ¶2.  The 2006 Symposium on Bioluminescence and Chemiluniscence

12  was attended by Berthold Germany's Chairman of the Board, but he did not take a NightOwl

13  system or otherwise display or demonstrate any products.  The 2006 Nuclear Science Symposium

14  was attended by a Berthold Germany employee, but the symposium had no relation to bioanalytics

15  and a NightOwl system was not displayed or demonstrated in any fashion.[1]  Oberhofer Decl. ¶3.

16  In fact, Berthold Germany has never attended a trade show or meeting in California where it

17  displayed, demonstrated, or offered for sale a NightOwl system. *Id*. ¶2.  Although Plaintiff did not

18  assert the trade show attendance in support of specific jurisdiction, the trade shows could not in

19  fact be the basis for asserting specific jurisdiction over Berthold Germany.

20         In any event, attendance at sporadic trade shows and meetings within California cannot

21  subject Berthold Germany to general jurisdiction in California such that Berthold Germany could

22  be sued for any claim by any party within the state, whether or not the claim is related to the

23  contacts with the state.  The law is clear that visits to a forum to attend trade shows do not

24  constitute "continuous and systematic" contacts. *See Autogenomics, Inc. v. Oxford Gene*

25  *Technology Ltd.*, 566 F.3d 1012, 1017-1018 (Fed. Cir. 2009)[2]; *Core-Vent Corp. v. Nobel Indus.*

26  [1] Only Berthold USA employees attended the 2010 Clinical Lab Expo referenced in Plaintiff's
27  Response.

28  [2]*Autogenomics* provides a typical example of the Federal Circuit determining that various contacts
    do not create general personal jurisdiction. Autogenomics sued Oxford in a district court located in

3

1   *AB*, 11 F.3d 1482, 1490 (9th Cir. 1993) (rejecting argument that a nonresident's attendance at

2   "five medical conferences in [the forum] over the last four years" constituted "systematic and

3   continuous contacts with" the forum).  The *Patent Rights Protection Group* case cited by Plaintiff

4   does not even discuss general jurisdiction, but relates entirely to specific jurisdiction, and clearly

5   does not suggest that trade show attendance subjects a party to general jurisdiction.[3]

6        In view of the above, general jurisdiction does not exist over Berthold Germany within

7   California, and it would offend traditional notions of fair play and substantial justice to exercise

8   personal jurisdiction over Berthold Germany in California.

9   **II.**     **Venue is Not Proper in this District over the Claims Against Berthold USA**

10        Venue is not proper in this District over the claims against Berthold USA because Berthold

11   USA has not committed any acts of alleged infringement in this District and it is not subject to

12   jurisdiction in this District, as required by 28 U.S.C. § 1400(b).  Berthold USA has not

13   manufactured, sold, or distributed the accused products within the Southern District of California

14

---

15   California for a declaratory judgment of invalidity and non-infringement with respect to Oxford's
     patent, although Oxford did not have facilities, assets, employees, or agents in California. The
16   Federal Circuit found that general personal jurisdiction was not present even though (1) Oxford
     contacted Autogenomics with respect to licensing the patent at issue, exchanged correspondence
17   with Autogenomics to convince Autogenomics that patent was valid, and even sent representatives
     to negotiate a license with Autogenomics in California; (2) Oxford had entered into other non-
18   exclusive licenses with approximately 10 companies as to its technology, including technology
     covered by the patent at issue; (3) Oxford had entered into a collaborative agreement with a third
19   party, which had offices in California; (4) "Oxford attended three scientific conferences … in
     California in 2003, 2005, and 2007" where it operated booths (5) "Oxford sold 20 microarrays to a
20   California company for $7,600"—"approximately 1% of its revenue that year;" and (5) Oxford
     published an application note concerning its technology in an online version of Nature, which
21   drew California visitors.  The court specifically rejected the suggestion that attendance at four
     trade shows over five years was the equivalent of having an office even if Oxford met potential
22   customers there.  *Id*. at 1018.  All of the above contacts in combination were insufficient to show
     the type of "continuous and systematic contacts" required to establish general jurisdiction.
23   Berthold Germany has far less contacts with California than Oxford and it clearly is not subject to
     general jurisdiction in California.
24
     [3] Further, the *Patent Rights Protection Group* decision did not even determine whether attendance
25   at trade shows was sufficient to establish minimum contacts with the forum such that specific
     jurisdiction was appropriate, because the underlying district court failed to evaluate minimum
26   contacts in its personal jurisdiction analysis.  *See* 2009-1391, pg. 8.  The district court's decision
     was overturned on other grounds.
27

28

REPLY TO OPPOSITION TO MOTION TO DISMISS        CASE NO. 3:10-cv-02343-JAH (JMA)

1   and Berthold USA is not subject to specific or general personal jurisdiction in the Southern

2   District of California.

3       With regard to general jurisdiction, Berthold USA has no substantial, continuous and

4   systematic contacts with the Southern District of California. As explained in the motion to

5   dismiss, Berthold USA does not have a place of business, any employees, corporate office, branch

6   office, any other facilities, telephone listings, mailing address, or any other property located in the

7   District.  While Berthold USA has sold products in the District, those products are unrelated to the

8   cause of action.  The mere sale of goods unrelated to an action is not sufficient to establish general

9   jurisdiction.  *Congoleum Corp. v. DLW Aktiengesellschaft,* 729 F.2d 1240, 1242 (9th Cir. 1984)

10  (sales of products unrelated to cause of action within forum do not establish general jurisdiction).

11  Thus, general jurisdiction does not exist over Berthold USA within this District.

12      With regard to specific jurisdiction, Plaintiff first implies that Berthold USA is attempting

13  to mislead the Court by only disclosing its sales during the six year period prior to Plaintiff's

14  initiation of this case.  However, 35 U.S.C. § 286 provides a six year statute of limitations for

15  claims of patent infringement.  Therefore, any conduct prior to November 12, 2004, (six years

16  prior to initiation of this case) could not give rise to personal jurisdiction because the conduct

17  would not give rise to a cause of action.[4]  Nevertheless, Berthold USA has <u>never</u> manufactured,

18  sold, and/or distributed the accused products in this District or otherwise placed any such products

19  into the "stream of commerce" which, to Berthold USA's knowledge, have made their way into

20  San Diego. Mullins Decl, ¶2.  A full list of all NightOwl systems sold by Berthold USA since its

21  founding and the customers that purchased the systems has also been confidentially provided to

22  Plaintiff.  Since and including 2000, Berthold USA has sold fourteen (14) NightOwl systems, and

23  none were sold in this District.

24      Plaintiff also alleges that "it is likely that Berthold USA … has sold at least one NightOwl

25  instrument in San Diego" based on an advertisement from a third party, Bio Surplus, selling a used

---

26  [4] Claims for inducement to infringe and contributory infringement are also barred by 35 U.S.C. §
27  286 if Defendants original sale of the product used in an allegedly infringing method occurred
    over six years prior to suit.  *Standard Oil Company v. Nippon Shokubai Kagaku Kogyo Co., Ltd.*,
28  754 F.2d 345 (Fed. Cir. 1985).

5

1   NightOwl system allegedly obtained from a San Diego biotech.  Once again, neither Berthold

2   Germany nor Berthold USA have sold any NightOwl systems in San Diego.  In this regard, it is

3   noted that the manufacturer listed on the Biosurplus advertisement is "EG&G Berthold."  To

4   provide a bit of background, the original Berthold company, formed in the 1940s, was sold to a

5   large publicly traded company, EG&G, Inc., later named PerkinElmer, Inc., in 1989.  The

6   Berthold division of the company, EG&G Berthold, sold NightOwl systems in the late 1990s –

7   2000.  In 2000, PerkinElmer sold the division to Berthold Germany.  Berthold USA was formed in

8   or about November 2000.  Neither Berthold Germany nor Berthold USA has any affiliation with

9   PerkinElmer.  In any event, the NightOwl system sold by BioSurplus appears to be a system sold

10  by EG&G Berthold.  It was not sold by Berthold Germany or Berthold USA. Oberhofer Decl.  ¶4

11  & Mullins ¶2.  Furthermore, any sales of NightOwl systems by EG&G Berthold would have

12  occurred in or before 2000,  at least ten years before this suit was filed and three or four years

13  before Plaintiff's two patents issues.  A third party's resale of an old camera that was originally

14  sold by someone other than Defendants and was sold before the patents existed and beyond the

15  statutory limitation period, does not establish jurisdiction over these Defendants.

16       Further, Plaintiff argues that even if Berthold USA has not sold NightOwl products within

17  this District, it may still be subject to jurisdiction because its employee sent a one paragraph email

18  to Plaintiff in 2006 inviting a discussion with Berthold USA to discuss Berthold's products and

19  because Berthold USA has attended trade shows in San Diego.  With regard to the trade shows,

20  Berthold USA employees have only attended one trade show in this District. Mullins Decl.  ¶4.

21  The 2010 Clinical Lab Expo referenced by Plaintiff in its Response was outside this District, in

22  Anaheim, California, and is irrelevant to the venue determination, although Berthold USA did not

23  display or demonstrate the NightOwl system at the show. *Id.* ¶5.  However, Berthold USA

24  attended the 2008 AACR (American Association for Cancer Research) Annual Meeting in San

25  Diego.  At the AACR meeting, Berthold USA rented a booth in which it displayed many products,

26  including the NightOwl system.  The performance of the system was not demonstrated at the

27  meeting and the system was merely displayed adjacent the booth for viewing.  Berthold USA

28  participated in the trade show to promote itself generally to the cancer research field.  Berthold

6

REPLY TO OPPOSITION TO MOTION TO DISMISS            CASE NO. 3:10-cv-02343-JAH (JMA)

1   USA did not attend the trade show to sell NightOwl systems, to negotiate sales or to take orders;

2   moreover, Berthold USA did not sell any NightOwl systems, negotiate sales or take orders at the

3   show. Berthold USA did not have available at the meeting and did not provide any pricing

4   information or price quotes on the units. None of the meeting attendees bought a NightOwl system

5   at the meeting or at any point thereafter.  Furthermore, if an attendee had expressed an interest in

6   the system, Berthold USA would have placed the attendee into contact with a sales agent located

7   outside of the District to discuss their interest in the system.  *Id.* ¶6.

8           Berthold's email inquiry to Plaintiff and the trade show obviously are not "sales" of the

9   system that could be alleged as infringing, since no NightOwl products were sold, and they

10  obviously do not constitute an allegedly infringing "manufacture."  However, they are also not

11  "offers for sale" or "uses" within the District.  Whether an "offer to sell" has taken place under 35

12  U.S.C. § 271(a) is determined "according to the norms of traditional contractual analysis." *See*

13  *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1254-55 (Fed. Cir. 2000).  According to the

14  Federal Circuit, an "offer to sell" must contain at least a description of the goods and a price, and

15  it must be communicated such that it could be made into a contract by simple acceptance. <u>*Id*</u>. at

16  1257 (holding that to constitute an "offer to sell," the defendant must have "communicated a

17  'manifestation of willingness to enter into a bargain, so made as to justify another person in

18  understanding that his assent to that bargain is invited and will conclude it.'"). A communication

19  containing a description but no price cannot be an "offer to sell." *MEMC Elec. Materials, Inc. v.*

20  *Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1376 (Fed. Cir. 2005). Likewise, merely

21  demonstrating or providing descriptions of a product at a conference cannot be an "offer to sell"

22  since neither of those activities communicates a "manifestation of willingness to enter into a

23  bargain." *See Med. Solutions, Inc. v. C Change Surgical LLC,* 468 F. Supp. 2d 130, 135 (D.D.C.

24  2006) *aff'd,* 541 F.3d 1136 (Fed. Cir. 2008); *Black & Decker, Inc. v. Shanghai Xing Te Hao Indus.*

25  *Co.*, No. 02C4615, 2003 WL 21383325, *3 (N.D. Ill. June 12, 2003) (stating that "merely

26  displaying an accused product, even in an obviously commercial atmosphere such as a trade show,

27  does not, by itself, constitute an offer to sell" since there must at least be a "description of the

28  product and a price at which it could be purchased").  Since the e-mail correspondence with

7

1   Plaintiff did not even reference the NightOwl system, much less offer price terms, and since

2   NightOwl systems were not available for purchase and pricing information was not available at the

3   AACR Annual Meeting, there was no "offer for sale."  As explained by Ms. Mullins, Berthold

4   USA did not attend the AACR meeting to sell NightOwl systems, negotiate sales, or take orders.

5         Furthermore, displaying a product at a trade show cannot be an allegedly infringing "use"

6   of a system. The ordinary meaning of "use" is "to put into action or service." *Med. Solutions, Inc.*

7   *v. C Change Surgical LLC*, 541 F.3d 1136, 1141 (Fed. Cir. 2008)(display of product at trade show

8   where product was not placed into service could not constitute "use" and therefore the specific

9   jurisdiction over defendant was not proper).  Plaintiff's patents relate to methods of imaging cells

10  in mice using imaging systems.  At the AACR annual meeting, Berthold USA merely displayed

11  the NightOwl system and did not put the system into service.  The system was not used to image

12  any mice or for any other purpose.  As such, Berthold USA's display of the NightOwl system at

13  the AACR meeting cannot constitute an allegedly infringing use.  *Id. See also Fluid Mgmt. Ltd.*

14  *P'ship v. H.E.R.O. Indus., Ltd.,* No. 95C5604, 1997 WL 112839, at *4 (N.D. Ill. Mar. 11, 1997)

15  ("We conclude that the mere demonstration or display of an accused product, even in an obviously

16  commercial atmosphere, does not constitute an infringing use under § 271(a).")

17        Additionally, demonstrating an allegedly infringing product at a conference is not a

18  "purposefully directed" activity to residents of this District.  Berthold USA did not attend the trade

19  show for the purpose of meeting with residents of this District.  The national meeting just

20  happened to be held that year in San Diego.  In *Fluid Mgmt. Ltd.*, the court noted that the

21  nonresident defendant's "contacts with Illinois arise from their display and arguable demonstration

22  of their products at the . . . trade show, which happened to be held in Chicago, and their

23  presumable attempt to market their products . . . to several Illinois customers who were planning

24  to attend and/or, did attend, the trade show." No. 95C5604, 1997 WL 112839 at *6. Considering

25  "the nature and quality of" defendants activities, the court held that the defendant had not

26  "purposefully availed themselves of the privilege of conducting business within Illinois such that

27  they should have reasonably anticipated that they might be haled into court in Illinois." Id. *See*

28  *also Black & Decker*, No. 02C4615, 2003 WL 21383325 at *1-2 (holding that participation in a

8

1   trade show did not constitute purposefully directed activity).

2        Since Berthold USA has not manufactured, sold, or distributed the accused products within

3   the Southern District of California, Berthold USA is not subject to specific personal jurisdiction in

4   the  District. Since Berthold USA is not subject to personal jurisdiction within this District, it

5   cannot be found to "reside" in this District under 28 U.S.C. § 1400(b) or otherwise be subject to

6   venue in this District.

7   **III.**     **Jurisdictional Discovery is Not Warranted Since Plaintiff Has Not Made a Prima**
8           **Facie Showing of Personal Jurisdiction or Raised Any Genuine Issues of Material**
        **Fact**

9

10        Jurisdictional discovery is not warranted unless "a showing that further discovery would

11   elucidate the facts necessary to prove that the court had personal jurisdiction." *Autogenomics*, 566

12   F.3d at 1023; *Med. Solutions,* 541 F.3d at 1142; *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556

13   F.2d 406, 431 n.24 (9th Cir. 1977)(Discovery unwarranted where "discovery would not

14   demonstrate facts sufficient to constitute a basis for jurisdiction"). Even if the Court assumes the

15   truth of all of Plaintiff's factual allegations and construes all inferences in the light most favorable

16   to Plaintiff, Plaintiff has still not made a *prima facie* case for exercising jurisdiction over

17   Defendants.  At the end of the day, it appears that the only reason this case was brought in this

18   forum is for the convenience of Plaintiff's counsel. This is not enough.

19        Plaintiff alleges that it needs discovery into Defendants' attendance at trade shows and

20   scientific meetings.  However, the details concerning any arguably relevant trade shows and

21   meeting are provided herein.  The Defendants have already submitted sufficient uncontradicted

22   facts surrounding these events.  Additionally, Defendants have provided a list of <u>all</u> sales of the

23   accused products, not limited to the last six years (the statutory limitations period).

24        The other requested information relates to a third party's patent and Plaintiff has not

25   explained how such information is arguably relevant to the jurisdictional analysis.  Plaintiff also

26   requests discovery concerning <u>Plaintiff's</u> negotiations with Berthold Germany.  This information

27   should already be in Plaintiff's possession and is not relevant to whether Defendants have

28   committed any acts of infringement within this District.  When additional requested discovery

9

1  does not pertain to facts that could alter the jurisdictional determination, the request for discovery

2  should be denied.

3         Granting Plaintiff jurisdictional discovery will do nothing to change the law. It will only

4  increase both parties' litigation expense and further burden this Court.  Plaintiff has alleged no

5  facts to the contrary of any fact alleged by Defendants, and jurisdictional discovery is not

6  warranted.  Plaintiff has not met the minimal standard required for this Court to grant Plaintiff's

7  request for jurisdictional discovery. Thus, Plaintiff's request should be denied.

8                                    **CONCLUSION**

9         For the reasons stated herein, Defendants respectfully requests that this Court deny

10  Plaintiff's request for jurisdictional discovery, grant Defendants' Motion and enter an order either

11  dismissing this action or transferring the action to the United States District Court for the Eastern

12  District of Tennessee. Defendants believes that this Motion to Dismiss may be adequately

13  considered based on the briefs and declarations and that oral argument is unnecessary.

14

15  Dated: March 21, 2011                        GOODWIN PROCTER LLP

16

17                                      By:    /s/ Kurt M. Kjelland
                                              Kurt M. Kjelland
18                                            kkjelland@goodwinprocter.com
                                              Goodwin Procter LLP
19                                            4365 Executive Drive, 3rd Floor
                                              San Diego, CA 92121
20                                            Attorneys for Defendants

21

22

23

24

25

26

27

28

                                          10

1

**CERTIFICATE OF SERVICE**

2

The undersigned hereby certified that a true and correct copy of the above and foregoing

3

document has been served on March 21, 2011, to all counsel of record who are deemed to have

4

consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any

5

counsel of record who have not consented to electronic service through the Court's CM/ECF

6

system will be served by electronic mail, first class mail, facsimile and/or overnight delivery.

7

/s/ Kurt M. Kjelland
Kurt M. Kjelland

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

REPLY TO OPPOSITION TO MOTION TO DISMISS                    CASE NO. 3:10-cv-02343-JAH (JMA)